**ORIGINAL**

**United States District Court**
NORTHERN DISTRICT OF GEORGIA

FILED IN CHAMBERS
U.S.D.C. Atlanta
OCT 1 2 2012
JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES OF AMERICA

v.

Vygantas Visinskis and
Mindaugas Kacerauskis

(Name and Address of Defendant)

CRIMINAL COMPLAINT

CASE NUMBER: 1:12-MJ-1402

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Between in or about August 17, 2012, until on or about September 5, 2012, in Fulton County, in the Northern District of Georgia, and elsewhere, the defendants, (Track Statutory Language of Offense)

COUNT ONE

Vygantas Visinskis and Mindaugas Kacerauskis did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding to knowingly obtain the labor and services of T.B., in violation of Title 18, United States Code, Sections 1589, by means of force and threats of force, and physical restraint and threats of physical restraint to T.B. and another individual, T.K.; by means of serious harm, and threats of serious harm to T.B. and another individual, T.K.; by a scheme, plan and pattern intended to cause T.B. to believe that, if T.B. did not perform such labor and services that he would suffer serious harm; and by the abuse and threatened abuse of law and the legal process; all in violation of Title 18, United States Code, Section 1594(b); and

COUNT TWO

Vygantas Visinskis and Mindaugas Kacerauskis, aided and abetted by each other, did knowingly obtain the labor and services of T.B. by means of force and threats of force, and physical restraint and threats of physical restraint to T.B. and another individual, T.K.; by means of serious harm, and threats of serious harm to T.B. and another individual, T.K.; by a scheme, plan and pattern intended to cause T.B. to believe that, if T.B. did not perform such labor and services that he would suffer serious harm; and by the abuse and threatened abuse of law and the legal process; all in violation of Title 18, United States Code, Sections 1589 and Section 2.

I further state that I am a Special Agent and that this complaint is based on the following facts:

SEE THE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof.    (X) Yes ( ) No

_____
Signature of Complainant
Bruce L. Busby

Based upon this complaint, this Court finds that there is probable cause to believe that offenses have been committed and that the defendants committed them. Sworn to before me, and subscribed in my presence.

October 12, 2012                              at    Atlanta, Georgia
Date                                                City and State

JANET F. KING
United States Magistrate Judge                      _____
Name and Title of Judicial Officer                  Signature of Judicial Officer
AUSA Richard S. Moultrie, Jr.

# AFFIDAVIT

## I.
## INTRODUCTION

I, Bruce L. Busby, Special Agent (SA), with Homeland Security Investigations (HSI), Atlanta, Georgia, being duly sworn, states as follows:

1. I am a Special Agent of HSI assigned to the Office of Investigations, Special Agent in Charge, Atlanta, Georgia. I have approximately 26 years of law enforcement experience at the federal, state and local level. I graduated from the Federal Law Enforcement Training Center in May of 2007 as a Special Agent of the United States Immigration and Customs Enforcement. Prior to this year, I was a Patrol Agent with the United States Department of Homeland Security, Bureau of Customs and Border Protection, United States Border Patrol. I held this position for approximately 15 years. I completed training at the Border Patrol Academy and have extensive experience with the investigation and apprehension of aliens who are unlawfully present in, those who attempt to illegally enter, and those who illegally bring aliens into, the United States. I have received specialized training regarding the investigation and enforcement of United States Immigration Laws.

2. I submit this affidavit for the purpose of showing probable cause to issue a complaint to arrest Vygantas VISINSKIS ("VISINSKIS") and Mindaugas KACERAUSKIS ("KACERAUSKIS") for the offense of conspiracy to commit forced labor, in violation of Title 18, United States Code, Section 1594(b), and the offense of forced labor, in violation of Title 18, United States Code, Sections 1589 and Section 2. This affidavit is based upon an ongoing investigation. The facts set forth below are based upon my knowledge and personal observations, as well as information and documents provided to me in my official capacity. Because this affidavit is submitted for the limited purpose of showing probable cause, I have not included details of every aspect of this investigation. The information contained herein is further based on my review of court documents and police reports as well as interviews of the defendants and victims.

II.
FACTS ESTABLISHING PROBABLE CAUSE

3. Sandy Springs Police Department ("SSPD") officers encountered VISINSKIS and KACERAUSKIS on September 5, 2012, after officers responded to a 9-1-1 call at approximately 5:15 a.m. from 6881 Peachtree Dunwoody Road, Apartment 312, in Sandy Springs, Fulton County, Georgia.

4. SSPD called HSI after responding to the scene. SSPD Detective Amanda Martin told me that they had encountered four individuals from the country of Lithuania and thought that two of the individuals may be victims of human trafficking or forced labor. SSPD requested that HSI respond to their office.

5. After HSI agents responded to the SSPD headquarters, SSPD Detective Michael Bailey ("Detective Bailey") informed HSI that, when officers arrived at the Peachtree Dunwoody Road location, they encountered T.B., T.K., VISINSKIS, and KACERAUSKIS. Detective Bailey stated that T.B. advised officers that he and T.K. were being held against their will and not allowed to leave. Detective Bailey arrested VISINSKIS and KACERAUSKIS with two counts of false imprisonment, and KACERAUSKIS with two counts of false imprisonment and aggravated assault.

6. On September 5, 2012, HSI Special Agent Hye Yoo Beckett ("SA Beckett") and I interviewed T.B.. T.B. stated that he met VISINSKIS about three to four weeks earlier in Lithuania. VISINSKIS came to T.B.'s business and attempted to recruit him to come to the United States to work with computers. T.B. agreed to go but wanted his friend, T.K., to accompany him.

3

T.B. told VISINSKIS that T.K. could speak English and could help with the business. T.B. was also a bit apprehensive about going with VISINSKIS alone.

7. Approximately two weeks after this meeting, on or about August 17, 2012, VISINSKIS and KACERAUSKIS transported T.K. and T.B. to the airport in Lithuania. VISINSKIS bought T.B. a computer before the men arrived at the airport and directed T.B. to various websites where they were able to buy airline tickets using a stolen credit card. T.B. stated that he was able to buy four tickets (for VISINSKIS, KACERAUSKIS, T.K., and himself) for travel from Lithuania to Atlanta, Georgia, approximately four hours before the flight. T.B. stated that, at that time, he discussed his reservations about committing credit card fraud to VISINSKIS and KACERAUSKIS. VISINSKIS replied that T.B. had already committed the crime. T.B. stated that he felt threatened by KACERAUSKIS and VISINSKIS and therefore continued with the trip.

8. T.B. stated that when the group arrived in Atlanta, VISINSKIS rented a car and paid cash for a hotel room. Subsequently, VISINSKI rented the apartment at 6881 Peachtree Dunwoody Road in Sandy Springs, Georgia, but that VISINSKIS did so in T.K.'s name. VISINSKI told T.B. that he

brought T.B. to the United States because he (VISINSKIS) believed that T.B. had friends who were involved in credit card fraud, so that VISINSKIS thought that T.B.'s knowledge of computers would enable VINSINSKIS to use a credit card scheme to export items to Lithuania.

9. At VISINSKI'S direction, T.B. stated that he attempted to buy items on the internet with stolen credit cards, but was only successful on one occasion. T.B. stated that he was able to purchase a washer and dryer with a stolen credit card at VISINSKI'S direction and that the items were shipped to an address in Summit, Illinois. VISINSKI informed T.B. and T.K. that they were already involved with credit card fraud and, therefore, could not go to the police.

10. According to T.B., VISINSKIS caused him to commit credit card fraud by telling T.B. that he was engaged in criminal conduct and owed money to the owner of the bar where T.B. was employed. VISINSKIS was present when KACERAUSKIS, on three occasions, kicked, struck, and cut T.B.. T.B. also recounted that, on one occasion, KACERAUSKIS threatened to beat up T.K.. KACERAUSKIS said to T.B.: "If you don't work you'll have to watch your friend being beaten."

11. T.B. reported that on a different occasion KACERAUSKIS saw T.B. checking T.B.'s *Facebook* account instead of working, and that KACERAUSKIS struck T.B. on the top of the head with a frying pan approximately 5 times. KACERAUSKIS then struck T.B. in the stomach and about his body.

12. On a separate occasion, KACERAUSKIS broke a plastic fork and used the instrument to cut T.B.' right upper bicep. T.B. stated that, on two other occasions, he was kicked in the head and body by KACERAUSKIS, causing a black eye. He stated that VISINSKIS did not hit him but witnessed the violence. VISINSKIS reminded T.B. that if T.B. did not buy items for VISINSKIS with stolen credit cards that KACERAUSKIS'S violence would continue.

13. On or about September 4, 2012, the night before T.B. called 9-1-1, KACERAUSKIS warned T.B. that he would stab T.B. if he or T.K. attempted to leave. Additionally, KACERAUSKIS took T.K.'s and T.B.'s passports so they could not leave.

14. Following T.B.'s and T.K.'s rescue, T.B. told investigators that, during the three weeks that T.K. and he were with KACERAUSKIS and VISINSKIS, T.B. learned that the defendants had both spent time in jail.

T.B. also believed that the men may be a part of the "mafia." Further, T.B. believed that KACERAUSKIS had spent time in a jail in Norway for stabbing someone. T.B. said that all of this information contributed to his fear of KACERAUSKIS and VISINSKIS.

15. While interviewing T.B., agents observed that T.B. had a bruised eye, swelling on the top of his head, and a cut on his bicep. T.B. stated that all the injuries were caused by KACERAUSKIS hitting him with his hand, kicking him with his foot, and striking him with a frying pan.

16. On September 5, 2012, SA Beckett and I interviewed KACERAUSKIS. He waived his *Miranda* rights and agreed to be interviewed. KACERAUSKIS identified VISINSKIS as his friend. According to KACERAUSKIS, VISINSKIS, KACERAUSKIS, T.K. and T.B. traveled from Lithuania about three weeks prior to the interview. He stated that T.B. knew about computers and that T.B. and T.K. traveled to the United States to buy motorcycles and cars. He stated that VISINSKIS paid for the travel expenses, a rental car, a hotel, and the apartment. When agents asked KACERAUSKIS about T.B.'s eye injury, KACERAUSKIS replied, "I hit him." When asked why he hit T.B., KACERAUSKIS answered that, "they were trying to leave and I took the passports so they could not leave."

17. On that same day, SA Beckett and I interviewed VISINSKIS with the assistance of a Lithuanian translator. SA Becket advised VISINSKIS of his *Miranda* rights through an AT&T Lithuania interpreter. VISINSKIS stated that he understood the rights and agreed to talk with agents without an attorney.

18. VISINSKIS stated that he met T.B. about three weeks prior to the interview through a mutual friend. He stated that T.B. told VISINSKIS that T.B. knew how to get equipment so VISINSKIS bought T.B. a computer for that purpose. VISINSKIS stated that he came to Atlanta with $7,000 in United States currency to buy equipment and paid for the group to travel to the United States to help with VISINSKIS'S business. VISINSKIS also stated that he gave $4,000 to T.B. to buy the men's plane tickets. While VISINSKIS admitted that he rented and drove a rental car upon arriving in Atlanta as well as the hotel rooms, he denied witnessing any fights or beatings, or that he took T.B.'s and T.K.'s passports.

III.
CONCLUSION

19. Based on the foregoing, there is probable cause to believe that VISINSKIS and KACERAUSKIS violated federal law prohibiting conspiracy to commit forced labor, in violation of Title 18, United States Code, Section

1594(b), and forced labor, in violation of Title 18, United States Code, Sections 1589 and Section 2.